1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW G. SILVA,

                    Plaintiff,

          v.

CHRISTINE GREGOIRE, *et al.*,

                    Defendants.

Case No. C05-5731 RJB/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**April 20, 2007**

          This civil rights action has been referred to United States Magistrate Judge Karen L.

Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff has filed a

complaint under 42 U.S.C. § 1983 alleging that the Defendants violated his First and Fourteenth

Amendment rights while he was incarcerated at the Washington Corrections Center (WCC) by

stealing his grievances, retaliating against him, denying him a pre-transfer hearing before placing him

in segregation, and denying him court access. (Dkt. # 14).  Presently before the Court is the motion for

summary judgment of Defendants, seeking dismissal of Plaintiff's claims with prejudice.  (Dkt. # 87).

Defendants argue that Plaintiff's Complaint should be dismissed as he has failed to exhaust his

administrative remedies, failed to state a claim upon which relief may be granted, failed to establish

REPORT AND RECOMMENDATION - 1

that Defendants personally participated in the alleged violations, and further that Defendants are

entitled to qualified immunity.  Plaintiff has not filed an answer to Defendants' motion.  Plaintiff was

given additional time to file his reply.  (Dkt. # 93).[1]  If a party fails to file papers in opposition to a

motion, such failure may be considered by the Court as an admission that the motion has merit.  CR

7(b)(2).

After careful review of Defendants' motion and balance of the record, the undersigned

recommends that the Court grant summary judgment in favor of Defendants and Plaintiff's claims

against them dismissed with prejudice.

## I.  FACTS

Plaintiff does not dispute the facts as related by Defendants which are as follows:

Plaintiff is currently in the custody of the Washington State Department of
Corrections (DOC) at Florence Corrections Center (FCC) in Florence, Arizona.
(Dkt. # 87, Exh. 1, Attach. A, 2).  Plaintiff was incarcerated at the Washington
Corrections Center (WCC), from October 4, 2005 through November 30, 2005, the
time period relevant to his First Amended Complaint.  (Dkt. # 14).

There is a grievance procedure available to DOC inmates, including those
incarcerated at WCC. The Washington Inmate Grievance Program (OGP) has been in
existence since the early 1980's and was implemented on a department-wide basis in
1985.  (Dkt. # 87, Exh. 2, ¶ 3). Under Washington's grievance system, an inmate may
file a grievance over a wide range of aspects of his/her incarceration. (*Id*., ¶ 4).
Inmates may file grievances challenging: 1) DOC institution policies, rules and
procedures; 2) the application of such policies, rules and procedures; 3) the lack of
policies, rules or procedures that directly affect the living conditions of the inmate; 4)
the actions of staff and volunteers; 5) the actions of other inmates; 6) retaliation by
staff for filing grievances; and 7) physical plant conditions. An inmate may not file a
grievance challenging 1) state or federal law; 2) court actions and decisions; 3)
Indeterminate Sentence Review Board actions and decisions; 4) administrative
segregation placement or retention; 5) classification/unit team decisions; 6) transfers;

---

[1]Plaintiff has filed a motion for temporary restraining order (Dkt. # 104), which will be
addressed in a separate report and recommendation.

REPORT AND RECOMMENDATION - 2

7) disciplinary actions; and several other aspects of incarceration (*Id.*).  The Washington grievance system provides a wide range of remedies available to inmates. (*Id.*, Exh. 2, ¶ 5).  These remedies are outlined in OGP 015 and include 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.  (*Id.).*

The grievance procedure consists of four levels of review.  (*Id.*, Exh. 2, ¶ 6). At Level 0, the Complaint or informal level, the inmate writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the inmate for additional information, or accepts the complaint and processes it as a formal grievance.  (*Id.*).  At Level I, the local grievance coordinator responds to the issues raised by the inmate.  (*Id.*).  If the inmate is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II.  (*Id.*). All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds.  (*Id.*).  If the inmate is still not satisfied with the response, he may make a Level III appeal to the Department headquarters, where the issue is reinvestigated and administrators respond.  (*Id.*).  The administrative grievance process has been exhausted when an inmate completes all four levels of the grievance process.

Plaintiff has filed three grievances regarding the incidents alleged in his complaint.  (*Id.*, Exh. 2, ¶¶ 11, 12, 13; Exh. 2, Attach. A, Grievance #0523983; Exh. 2, Attach. B, Grievance #0524531; Exh. 2, Attach. C, Grievance #0524969).  All three grievances were filed at WCC. (*Id.*).  Plaintiff filed the first grievance on October 10, 2005. (*Id.*, Exh. 2, ¶ 11; Exhibit 2, Attach. A).  This grievance was denied as the issue was not grievable. (*Id.*).  Plaintiff did not appeal this denial.

Plaintiff filed the second grievance on October 5, 2005.  (*Id.*, Exh. 2, ¶ 12, Exh. 2, Attach. B).  This grievance was resolved as the heat was turned on. (*Id.*). Plaintiff appealed this grievance to Level II.  (*Id.*).  Plaintiff was informed that the grievance was resolved. *Id.* Plaintiff did not appeal the Level II response.  *Id.*

Plaintiff filed the third grievance on October 24, 2005.  (*Id.,*,. Exh. 2, ¶ 13, Exh. 2, Attach. C).  This grievance was denied as the issue was not grievable.  (*Id.*). Plaintiff did not appeal this denial. (*Id.*).

On December 8, 2005, the Grievance Program Manager at DOC headquarters received a letter from Plaintiff alleging that he had filed six grievances at WCC and that they were stolen or obstructed.  (*Id.*, Exh. 2, ¶14, Attach. D).  The then Grievance Program Manager, Dean Mason, responded to that letter notifying Plaintiff that six grievances had been received and processed at WCC. (*Id.*, Exh. 2, ¶15, Attach. E).  The Grievance Program Manager subsequently provided Plaintiff with copies of five of his grievances.  (*Id.*, Exh. 2, ¶16, Attach. F).

REPORT AND RECOMMENDATION - 3

On October 22, 2005, Plaintiff was infracted, by Defendant Coppola, for violating WAC 137-28-260 section 509, refusing a direct order by any staff member to proceed to or disperse from a particular area, and WAC 137-28-260 section 724, refusing a cell or housing assignment. (*Id.*, Exh. 3, Attach. A. Plaintiff had been transferred to a new cell or housing unit. As a result, another inmate had been assigned the cell and housing assignment from which he was being transferred. When Plaintiff refused transfer to his new cell and housing assignment, there was no place to house Plaintiff except the IMU. As a result of this infraction, and the nature of the infraction, Plaintiff was transferred to the Intensive Management Unit (IMU) on administrative segregation status. Administrative segregation status is for those inmates who are awaiting an infraction hearing. (*Id.*).

On October 24, 2005, Plaintiff was served with a copy of the initial serious infraction report and a hearing notice. (*Id.*, Exh. 3, Attach. A; Attach C). Plaintiff listed two offender witnesses on the hearing notice. (*Id.*, Exh. 3, Attach. C). Statements were obtained from these two offender witnesses. (*Id.*, Exh. 3, Attach. B). On October 28, 2006, a disciplinary hearing was conducted by Defendant Wentland. (*Id.*, Exh. 3, Attach. D). At the hearing, Plaintiff made a statement on his own behalf. (*Id.*). Plaintiff was found guilty of refusing a cell or housing assignment and not guilty of refusing a direct order by any staff member to proceed to or disperse from a particular area. (*Id.*, Exh. 3, Attach. E). Plaintiff was sanctioned to 10 days of segregation with credit for time served. (*Id.*) Plaintiff was not sanctioned with a loss of good conduct time. (*Id.*). Plaintiff appealed the finding of guilt. (*Id.*, Exh. 3, Attach. F). That appeal was denied. (*Id.*, Exh. 3, Attach. G).

While housed in the IMU, Plaintiff did not file a grievance regarding the temperature of meals. (*Id.*, Exh. 7, Attach. A, Deposition Transcript of Matthew Silva, page 40:line 20-page 41:line 3[2]). Additionally, while housed in the IMU, Plaintiff had access to books, if he was awake during pass out time: Friday after 10 p.m. (*Id.*, Exh. 4). Plaintiff did not file any kites (requests) regarding access to books while housed in the IMU. (*Id.*). Plaintiff did not file any grievances about access to books while housed in the IMU. (*Id.*, Exh. 7, Dep. Transcript 41:11-15). Plaintiff did not make any requests for access to the law library at WCC. (*Id.*, Exh. 4). The only inmate kites (requests) filed by Plaintiff during his stay in IMU were regarding photocopying. (*Id.*).

While housed in the IMU, Plaintiff had legal access. (*Id.*, Exh. 4, Attach. A). In order to receive legal library privileges Plaintiff was to submit an interview slip to the IMU Sergeant. (*Id.*). In order to have emergency legal library access while housed in the IMU, Plaintiff was to provide proof of an impending court date within

---

[2]Referred to hereafter as Dep. Transcript, page:line-line.

14 days.  (*Id.*).  Plaintiff did not request legal library access or emergency legal library access between October 22 and October 31, 2005, during the time he was housed in the IMU. (*Id.*, Exh. 4).

The law library at WCC was closed October 10-17, 2005, due to an investigation of offender clerk misconduct.  (*Id.*, Exh. 5).  Plaintiff filed what he called an "emergency grievance" on October 10, 2005.  (*Id.*, Exh. 2, Attach. B).  An emergency grievance is permitted to grieve "issues that present threat of death or injury to an offender or staff member, or disruption of the facility."  (*Id.*, Exh. 2, ¶12).  Plaintiff's grievance did not fall within this definition, so it was processed as a standard grievance.  (*Id.*).  Plaintiff's grievance was denied as non-grievable on October 13, 2005.  (*Id.*).  Plaintiff did not appeal this response. (*Id.*).

Plaintiff filed an offender complaint on October 5, 2005 asserting that the heat was not on in his housing unit.  (*Id.*, Exh. 2, Attach. A).  This complaint was received by the grievance coordinator on October 13, 2005.  (*Id.*).  The heat was raised in Plaintiff's housing unit on October 7, 2005.  (*Id.*, Exh. 6).  The heat is never turned off at WCC.  (*Id.*).  The temperature in the housing units at WCC is constantly monitored to insure that the temperature does not drop below 68° Farenheit.  (*Id.*).

## II.  DISCUSSION

### A.    Standard of Review

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626,

630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must

consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*,

809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

party only when the facts specifically attested by the party contradicts facts specifically attested by the

moving party. *Id.*

**B.      Plaintiff Has Failed to Exhaust His Administrative Remedies**

The Prison Litigation Reform Act states that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other federal law, by a prisoner confined in any jail, prison or other
> correctional facility, until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

By mandating exhaustion, Congress enabled corrections officials to address prisoner

complaints internally, often resulting in the correction of administrative problems, the filtering out of

frivolous claims, and ultimately a clear record of the controversy. *Porter v. Nussle*, 534 U.S. 516

(2002). Where exhaustion was once discretionary, it is now mandatory. *Id.*  "All 'available' remedies

must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain,

speedy, and effective.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  The *Porter*

REPORT AND RECOMMENDATION - 6

Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Id.* at 520.  The Supreme Court recently reaffirmed this in *Woodford v. Ngo*. 548 U.S. ___, No. 05-416 at 1 (2006). In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner.  *Id.* at 11.

The PLRA exhaustion requirement creates an affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1117-19 and nn. 9 & 13 (9th Cir. 2003).  Defendants raised this affirmative defense.  (Dkt. # 32, p. 6).

Defendants argue that Plaintiff did not exhaust his administrative remedies on any grievance he filed while incarcerated at WCC.  (Dkt. # 87, Exh. 2, ¶10). Therefore, Plaintiffs' claims should be dismissed pursuant to the *Woodford* decision. Plaintiff asserts that his grievances were either stolen by staff or other offenders or that the grievance coordinator did not process his grievances because they were meritorious.  (*Id.*, Exh. 7, Dep. Transcript, 28:25-29:9).  However, there is no evidence before the Court to support these theories.  Nor has Plaintiff provided any evidence that he appealed or re-filed any of the grievance he alleges were stolen and not processed.  Conversely, the uncontested evidence reflects that Plaintiff received notice from DOC's Grievance Program Manager that all of his grievances had been received and processed at WCC on December 9, 2005. (*Id.*, Exh. 2, ¶ 15, Attach. E).

Viewing the evidence in the light most favorable to the Plaintiff, it appears that Plaintiff has failed to exhaust his available remedies contrary to the requirements of the Prison Litigation Reform Act.  Therefore, the undersigned recommends that Defendants are entitled to dismissal of Plaintiff's claims without prejudice.

Defendant argues in the alternative that they are entitled to summary dismissal of all of

REPORT AND RECOMMENDATION - 7

Plaintiff's claims because Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

**C.      Plaintiff Has Failed to State a Claim 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

Plaintiff must also allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a § 1983 claim. *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

Plaintiff claims violations of his rights under the First and Fourteenth Amendments. Defendants argue that Plaintiff has not established sufficient facts to support a claim under either of these amendments.

**1.      Plaintiff's Claims Regarding The Theft Of Or Failure To Process His Grievances Fail As A Matter Of Law**

REPORT AND RECOMMENDATION - 8

Plaintiff claims that the theft of or failure to process his grievances violate his First Amendment rights.  However, inmates have no constitutional right to a prison grievance system. *Mann v. Adams*, 855 F.2d 639 (9th Cir. 1988), *cert. denied,* 109 S. Ct. 242 (1988); *Stewart v. Block*, 938 F. Supp. 582 (C.D. Cal. 1996); *Hoover v. Watson*, 886 F. Supp. 410 (D. Del. 1995) (*aff'd*, 74 F.3d 1226). Moreover, if the state elects to provide a grievance mechanism, violations of its procedures do not give rise to § 1983 claims. *Hoover v. Watson, supra,; Brown v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997).

Defendants argue further that even if Plaintiff could establish a legal entitlement to have his prison grievances handled in a particular way, his claim fails factually as Plaintiff has failed to provide any evidence that any of his six grievances were stolen or not processed.  The uncontroverted evidence before the Court demonstrates that Plaintiff's six grievances were received and processed. (Dkt. # 87, Exh. 2, Attach. E).  Of those six grievances, Plaintiff admits that one was received and granted (*Id.*, Offender Complaint #0524531, Exh. 7, Dep. Transcript 29:12-17; Exh. 2, Attach. A). Of the remaining grievances Plaintiff alleges were stolen or not processed, three were handed directly to prison staff. (*Id.*, Exh. 7, Dep. Transcript 29:19-30:9).  Plaintiff provides only vague allegations that "they were obstructed by someone" without offering any supporting evidence. (*Id.*, Exh. 7, Dep. Transcript 30:15-16). Additionally, Plaintiff specifically admits that none of the Defendants were involved in the obstruction of these grievances. (*Id.*, Exh. 7, Dep. Transcript 30:15-31:7).  Finally, the two remaining grievances, Offender Complaint #0523983 and Offender Complaint #0524969, were received and processed. (*Id.*, Exh. 2, Attach. B and C).

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's claims regarding his grievances fail as a matter of law as Plaintiff has no constitutional right to a prison grievance system

REPORT AND RECOMMENDATION - 9

and further, the uncontroverted evidence reflects that Plaintiff's grievances were received and

processed.  Therefore, the undersigned recommends that Plaintiff's claims as to the processing of his

grievances be dismissed with prejudice.

### 2.      Plaintiff's Retaliation Claims Fail As A Matter Of Law

Plaintiff alleges that Defendants Jacobs and Coppola conspired to punish him for filing

meritorious grievances and they "set up a situation on purpose" to infract him. (Dkt. # 14; 87, Exh.

7, Dep. Transcript 32:13-21).  In addition, Plaintiff alleges that Defendant Porter knew of the

unlawful retaliation, but did nothing about it and Defendant Wentland knowingly participated in the

conspiracy by finding him guilty of the infractions.  (Dkt. # 14).

In order to establish a retaliation claim, Plaintiff must show that he was retaliated against for

exercising constitutional rights and that the retaliatory action did not advance a legitimate

penological goal.  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d

527, 532 (9th Cir. 1985). Plaintiff has the burden of showing that the retaliation was the substantial

or motivating factor behind the conduct of the prison official. *Mt. Health City Bd. Of Educ v. Doyle*,

429 U.S. 274, 285-87 (1976). Additionally, "plaintiff must allege that the defendant's actions caused

him some injury." *Resnick v. Hayes*, 200 F. 3d 641, 646 (9th Cir. 2000).

In his deposition testimony, Plaintiff explains the theory behind his allegations a bit further,

but provides no further factual basis for his conspiracy allegations.  Plaintiff claims that Defendants

Jacobs and Coppola knew of at least two grievances that he had filed at WCC in 2005 because they

were involved in the filings.  (*Id*., Exh. 7, Dep. Transcript 35:10-16).  In addition, Plaintiff claims

that various WCC officials and some of the higher ranking officials, were aware of Plaintiff's transfer

to WCC, and intended to retaliate against him by intimidating him out of pursuing the litigation he

REPORT AND RECOMMENDATION - 10

had undertaken against Washington State and/or King County officials. (*Id.*, Dep. Transcript 35:10-37:18).

Plaintiff also claims that Defendant Portland was aware of his presence in her facility. (*Id.*, Dep. Transcript 37:9).   Plaintiff acknowledged that he believed that Defendant Wentland was "not necessarily personally retaliating against" him. (*Id.*, Exh. 7, Dep. Transcript 37:21-38:2).   However, because Defendant Wentland found him guilty and his infraction appeal was denied, Plaintiff believes that this demonstrates that Defendant Wentland was retaliating against him against. (*Id.*, Exh. 7, Dep. Transcript 39:6-40:10).

Conversely, Plaintiff offers no evidence that Defendants Coppola and Jacobs were retaliating against him by infracting him for refusing a cell assignment. Plaintiff does not deny that he refused to transport his personal property to a new cell on October 22, 2005. (Dkt. # 14).  Plaintiff received notice and a hearing on the infraction, resulting in a sanction of placement in the IMU with credit for time served and no loss of good conduct time. (*Id*, Exh. 3, Attach. A-D).   Viewing this evidence in the light most favorable to Plaintiff, Plaintiff has not demonstrated that retaliation was the substantial or motivating factor behind his infraction.  To the contrary, the evidence reflects that the infraction was the result of Plaintiff's own conduct in refusing the cell assignment.  Accordingly, the undersigned concludes that Plaintiff's retaliation claims fail as a matter of law and recommends that Defendants' motion for summary judgment be granted on the basis that Plaintiff has failed to state a claim upon which relief may be granted.

### 3.      Plaintiff's Access To Courts Claims Fail As A Matter Of Law.

Plaintiff alleges that he was unable to file a petition for review in his criminal case, *State of*

*Washington v. Silva*, Division I, Court of Appeals No. 56445-5-I. (Dkt. # 14)  Plaintiff makes

additional allegations of injury in other cases that he was not able to file various motions. (*Id.*, Dkt. #

87, Exh. 7,  Dep. Transcript 46:20-52:23).

      The touchstone of an access to courts claim is whether the access to courts program provides

inmates with "meaningful access to the courts." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). This is

not a bright line test and an access to courts program is "evaluated as a whole to ascertain its

compliance with constitutional standards." *Bounds v. Smith*, 430 U.S. 817, 832 (1997).   In matters

such as placement of offenders and development of access to courts programs, courts are to defer to

the expertise of prison officials.  *Lewis*, 518 U.S. at 361 (prison officials are entitled deference with

regard to access to courts programs).  Before an inmate can bring a lawsuit for an access to courts

violation, the inmate must have standing – he must allege both that he was denied access to legal

materials or advice and that this denial harmed his ability to pursue non-frivolous legal action.  *Id.* at

351.  In other words, he must show actual injury.  To show actual injury the inmate must, for

example, show that because of the inadequate library facilities or because of the prison regulations

governing access and use of the library facilities, the inmate was unable to file a complaint or that the

inmate lost a case because the inmate could not timely file critical pleadings.  *Id.*

      Plaintiff was aware of his petition for review filing deadline on September 22, 2005.  (Dkt. #

!4, Exh. 6).  Plaintiff accessed the law library on October 6, 2005. (Dkt. # 87, Exh. 2, Attach. B).

The law library at WCC was closed from October 7-15, 2005.  (*Id.*, Exh. 5).  However, Plaintiff has

failed to demonstrate how this closure denied him the ability to file his petition for review or request

an extension from the Court of Appeals. Additionally, Plaintiff's placement in the IMU did not

contribute to this alleged injury as his petition for review was due to the Court of Appeals on

October 22, 2005, the same day he was transferred to the IMU.  (Dkt. # 14, Exh. 6).

REPORT AND RECOMMENDATION - 12

Plaintiff also makes numerous vague allegations that he suffered injury in other cases as he was not able to file various motions.  (*Id.*, Exh. 7; Dep. Transcript 46:20-52:23).  However, Plaintiff has not provided any evidence of these motions or any actual injury suffered in any of these cases. Although Plaintiff asserts that if he had been given appropriate legal access at WCC from October 5, 2005 through November 30, 2005, he would no longer be incarcerated (*Id.*, Exh. 7; Dep. Transcript 52:2-18), Plaintiff offers no evidence to support this broad allegation.

In addition, the evidence before the Court supports a contrary conclusion.  While housed in the IMU, Plaintiff had legal access, could receive legal library privileges, and could have emergency legal library access if he had an impending court date within 14 days.  (*Id.*, Exh. 4, Attach. A). Plaintiff did not request legal library access or emergency legal library access between October 22 and October 31, 2005, during the time he was housed in the IMU. (*Id.*, Exh. 4).  Plaintiff did not file any grievances about access to books while housed in the IMU.  (*Id.*, Exh. 7, Dep. Transcript 41:11-15).

Thus, Plaintiff's allegations are not sufficient to demonstrate actual injury in support of his claim that he was denied legal access.  In *Lewis*, the Court found that delays in providing access to legal materials or assistance of up to sixteen days did not violate the Constitution so long as the delay was the product of prison regulations reasonably related to legitimate penological interests even if the delay resulted in actual injury.  In this case, there is evidence of a library closure of one week. However, Plaintiff has not shown how the library closure affected his ability to perfect his appeal.  It is also clear that Plaintiff's placement in the IMU had no effect on Plaintiff's ability to perfect his appeal as his deadline was the same day as his placement in the IMU.  In addition, Plaintiff has provided no proof of any deadline as to the various other motions nor has he shown proof that any of his collateral attacks were not frivolous.  Lewis, 518 U.S. at 351 (no constitutional right to file

REPORT AND RECOMMENDATION - 13

frivolous litigation).   Therefore, Plaintiff's access to courts claim should be dismissed for failure to state a claim and lack of standing due to lack of injury.

**4.    Plaintiff Has Failed To State A Claim Under The Fourteenth Amendment**

Plaintiff claims that he was transferred to the IMU without a pre-transfer hearing, contrary to *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996).   The Supreme Court has held that prisoners will be found to have a state-created liberty interest protected by the Due Process Clause "only where the [prison's] contemplated restraint 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Keenan*, 83 F.3d at 1083, quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).   "There is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors [of the alleged hardship] . . . requires case by case, fact by fact consideration.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) quoting *Keenan*, 83 F.3d at 1089.

Ordinarily, administrative segregation in and of itself does not implicate a protected liberty interest.  *See, e.g., Sandin*, 515 U.S. at 486, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that the pre-sentencing prisoner had no liberty interest in being free from administrative segregation).   However, the ultimate inquiry is whether the confinement imposes atypical and significant hardship.  *See, e.g., Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) (disabled inmate in unit not equipped for disabled person gave rise to liberty interest); *Ramirez v. Galaza*, 334 F.3d at 861 (district court to consider fact that inmate had been in segregation for two years in determining whether confinement constituted significant and atypical hardship); *Wilkinson v. Austin*, 545 U.S. 209 (2005) (inmate's confinement in "supermax" prison implicates liberty interest); *O'Cain v.*

*Renton Police Dep't*, 2006 WL 324503 (W.D. Wash.) (indefinite placement in administrative

segregation with no meaningful review implicates liberty interest).

Administrative segregation may not be used as "a pretext for indefinite commitment of an

inmate." *Toussaint v. McCarthy*, 801 F.2d 1180, 1100 (9th Cir. 1986) (citing *Hewitt v. Helms*, 459

U.S. 460, 477 n. 9 (1983), *methodology abandoned on other grounds in Sandin*, 515 U.S. at 484 n.

5).  Due process requires that an individual be given a meaningful opportunity to present his views to

the critical decision makers.  *See Mathews v. Eldrige*, 424 U.S. 319, 333 (1976) (fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

manner).

In this case, the evidence reflects that Plaintiff was confined in administration segregation for

a period of nine days.  (Dkt. # 87, Exh. 4).  While he was housed in the IMU, Plaintiff had access to

legal books and materials, to emergency legal library privileges, and to the grievance process.  (*Id.*,

Exh. 4, Attach. A).

Plaintiff received notice of his infraction report and hearing.  He was given an opportunity to

call offender witnesses.  Statements were obtained from Plaintiff's witnesses.  A disciplinary hearing

was conducted, after which Plaintiff was found guilty of refusing a cell or housing assignment and

not guilty of refusing a direct order by any staff member to proceed to or disperse from a particular

area.  Plaintiff was sanctioned to 10 days of segregation with credit for time served, with no loss of

good conduct time.  Plaintiff appealed that finding and the appeal was denied.  (*See, Id.*, Exh. 3,

Attach. A-G).

The uncontroverted evidence before the Court reflects that the due process Plaintiff received

upon being transferred to administrative segregation was more than adequate.  He was given written

REPORT AND RECOMMENDATION - 15

notice, a full hearing and an opportunity to appeal.  In addition, Plaintiff was housed in segregation for a period of only nine days and while housed there was given access to legal materials and to the prison's grievance procedures.

Accordingly, Plaintiff's Fourteenth Amendment claims fail as a matter of law and the undersigned recommends Defendants' motion for summary judgment be granted on this basis as well.

### 5.      Plaintiff Has Failed to Allege and Failed to Show Personal Participation of Defendants

In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right.  *Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).  To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).  Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.   A defendant cannot be held liable under

REPORT AND RECOMMENDATION - 16

42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 n.58 (1978); *Padway*, *supra*.

Plaintiff has provided no evidence establishing how any of the Defendants were involved in the alleged theft or obstruction of his grievances. As noted above, Plaintiff has also failed to provide any evidence establishing that the infraction issued against him on October 22, 2006 was retaliatory in nature or in particular, how either Defendant Porter or Defendant Wentland participated in any such retaliation. Neither has Plaintiff failed to articulate how any of the Defendants participated in denying him legal access.

Absent personal involvement, the individual Defendants cannot be held liable.  Therefore, the undersigned recommends that Plaintiff's claims against them be dismissed with prejudice.

### 6.     Qualified Immunity of Federal Officials

Defendants urge that they are, in any event, entitled to qualified immunity, from the claims of plaintiff.  The Court has determined that plaintiff has failed to allege a deprivation of an actual constitutional right, the issue of qualified immunity need not be reached.    *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### III.  CONCLUSION

For the reasons stated above, the Court should **GRANT** the Defendants' motion for summary judgment and dismiss Plaintiff's claims against them with prejudice.  A proposed order accompanies this Report and Recommendation.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.

REPORT AND RECOMMENDATION - 17

1    Failure to file objections will result in a waiver of those objections for purposes of appeal.

2  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk

3

4  is directed to set the matter for consideration on **April 20, 2007**, as noted in the caption.

5

6    DATED this  2nd  day of April, 2007.

7

8

9                                        Karen L. Strombom
                                         United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  REPORT AND RECOMMENDATION - 18